The 21-2291 White v. Woods v. David Good morning. Good morning. Whenever you're ready. Mr. May it please the court. This is an appeal from the District Court's grant of summary judgment on plaintiff's claim that a prison nurse and a prison doctor were deliberately indifferent to his serious medical need. We're talking about a tear of a medial meniscus and a tear of his ACL in his knee. The appeal also includes the District Court's earlier ruling on a screening order. Because the case was filed pro se and it was filed in form of pauperous, the District Court screened the complaint and in the screening order the court ruled that plaintiff could only go forward on an Eighth Amendment claim against just the doctor and the nurse. The District Court did not allow plaintiff to go forward on a Monell claim against Wexford the employer of the doctor and the nurse. The District Court also did not allow plaintiff to pursue a state law medical malpractice claim even though the complaint included all the essential facts to support that claim. The court should reverse the screening order because the pro se complaint liberally construed was sufficient to state that state law medical malpractice claim. Mr. Flaxman, can I clarify with you, please? Are you appealing the screening orders ruling with respect to the deliberate indifference claim against Wexford? That is not how I read your brief. I understand and you have clearly spelled out that you are appealing the failure to or the court's ruling with respect to the state law claims. But the Monell claim and the deliberate indifference claim, I don't see that as part of your briefs. That's that's not a separate and independent request for relief that we're making. Okay, so we don't we don't want the court to just send the case back on that issue. Okay, so you are not and I'm sorry. I just want to make sure you understand. You are not appealing the district court's ruling at the screening order dismissing the deliberate indifference Monell claims against Wexford. Yes, that's correct. Okay. Thank you. All right. What I clarification are appealing the state claims against Wexford and the doctors. Yes. And what I will add about the Monell claim is that it's our position that should the court reverse. It would be within the district court's discretion to consider the Monell claim at that time. That's a separate issue. That is not on appeal. So right. Okay. All right. Thank you for the clarification. So I do want to address the state law medical malpractice claim, which we are asking for review on two separate points in the case. The first one is the screening order that we've just been discussing. The second one is when after council appeared in the case and sought to add the medical malpractice claim to the complaint and the district court denied that motion. And the first reason why we seek review of that and ask the court to reverse that is based on the screening order that because that claim was fairly within the plaintiff's pro se complaint. Should have allowed it to be added in the amended complaint filed by council later. Mr. Flaxman in your briefing on the motion to amend the complaint that you're speaking about. You focus on rule 15 and the failure to comply with rule 15 but here there was a scheduling order in place and the scheduling order required motions to amend to be filed within a certain time. And our case law says that when you're dealing with failure to comply with a scheduling order and a motion to amend that there's a two step process and you first have to meet good cause under rule 16 for failure to meet the scheduling order deadline. And then you do the rule 15 analysis. How have you met the first aspect of that good cause bringing the motion to amend the complaint so late in the game. The first reason that there was good cause because as I've argued the claim was within the original pro se complaint. The second reason for good. But good cause and I'm sorry to interrupt good cause for the delay. I don't know how having it be in the original complaint and dismissed and not litigated for the year plus period here. Would mean there's good cause good cause for the delay is what's required under rule 16. Do you understand I do understand and the argument that I'm making in response may be redundant but it is that because the claim should have been allowed in the screening order there wasn't any delay and whether that's an argument about the screening order or whether that's an argument about the motion to amend. I don't think we need to agree on I'm making the argument under both of those and the second point is that the concern in a normal case with allowing amendment is what the court is alluded to is restarting the case or adding more to the case. This isn't a case that was restarted. This is a case where a pro se litigant really didn't do any litigation and that's the reality of somebody who is incarcerated who's trying to litigate especially a complicated medical case that wouldn't have to be restarted when the motion to amend the complaint was filed. Years after the original complaint was filed and well after the close of discovery including the additional discovery that the court gave when when you came into the case and the reason that we are the other reason we're arguing it didn't need to be restarted is that all of the essential facts were in discovery that there was not there was no additional depositions or document. Exchanges that needed to be done based on the malpractice claim but it would be a different theory of the case where the defendants have been litigating a deliberate indifferent case with a much higher standard all along and then you bring in state law claims. You may not have had to take additional discovery but my guess is the defendants would have and they would have had to change their approach to the case. Well Med-Mal claims are easier the burden is easier because the standards are a bit lighter than deliberate indifference. Well I certainly don't think that having to defend a more challenging case is the kind of prejudice that the rule anticipates. But when you're dealing with negligence versus deliberate indifference your strategy might be very different. Well I think the strategy might be different at trial. The types of evidence the types of evidence the facts underlying each claim are the same. And besides making that the statement that the court has suggested that there would be a need for additional discovery the defense hasn't identified what that would be. They haven't identified another witness they would have needed to depose. There could be a view that the proper period of delay to really think about here is just the time from when Mr. White gets counsel and then when this motion to amend is filed. So and that's a three month delay. So can you tell me about that given as you say in your view the state law negligence claim was really fairly within the original pro se complaint to begin with. Why then does it take three months to ask to amend the complaint. And that's based on the need for counsel to have an expert report that the moment that we had the expert report supporting that medical malpractice claim is within a day or two is when we filed the motion seeking to amend. Did you need the expert report to to ask to amend the complaint. I mean yes I think that to to fairly comply with our rule 11 obligations we needed that expert report on what the standard of care is and what how to prove that medical malpractice came. But I think even even without that your Honor's suggestion about considering timing from the time counsel appeared it is a very short period. It's also similar to the case you heard before it was at the height of COVID. So I think so counsel appeared here in March of 2020. The we have orders in the southern district that had delayed discovery and motions. And I think that explains some of the timing and why counsel wasn't able to amend this complaint right away. And what I will address briefly and then reserve some of the time is the deliberate indifference claim where the district court viewed the case as limited to plaintiff's desire to have an MRI and orthopedic consult sooner. But the case is not just about a disagreement among doctors about the proper treatment. It's not just about a choice between an x-ray and an MRI. The detailed expert report that plaintiff would have relied on for the medical malpractice claim but also relied on for deliberate indifference shows that the defendants the nurse and the doctor never gave the plaintiff a full physical exam. And because of their deficiency in this treatment they persisted in ineffective treatment and didn't get an MRI for years. How do you get around the evidence that they did manual tests for the MRI or for a torn ACL which were negative and then the doctor actually did submit a request under collegial review for an MRI fairly early on that was denied. Which really takes it out of his hands at that point. I think that the question of the collegial review was not something that the district court ruled on. We certainly would argue that a doctor treating a patient does not get absolved from liability when the collegial review process prevents him. Maybe you have an argument under negligence but under deliberate indifference. How could the doctor have been deliberately indifferent if he did this initial manual exam which came up negative, went ahead and sent in a request for an MRI and was told by the review process that it wasn't approved. Well I think the argument is that the doctor can't rely on the review process. He's the doctor treating a patient. Under deliberate indifference? Under deliberate indifference if the doctor does not, ignores the treatment that a patient needs and fails to get him that treatment then the jury can find that the doctor is liable. You're into your rebuttal time. Just to make clear, the timing is not only, the MRI that was requested the first time that was denied by collegial review, our expert, our testimony, our evidence is sufficient for a jury to find came too late. And that it didn't come after just one test that was negative, it came after multiple x-rays for which there was no reason to repeat. And it came after physical exams that the expert says clearly showed were not complete physical exams. So Dr. David saw Mr. White first in August of 2015 and on September 8th, 2015, within a couple of weeks, he sought an MRI through the collegial review process and it was denied. So it was very quickly early on that he requested it. I disagree that it was quickly. The expert testimony is that there was no reason for him to delay that by ordering a second x-ray when he already had an x-ray. And that instead of being a few weeks, it should have been immediately to get the MRI once he was treated. Thank you. Thank you. Good morning. Good morning. May it please the court, Julie Tischer on behalf of the defendants. The district court reasonably considered Mr. White's complaint as one for deliberate indifference against Wexford. Mr. White alleged that Wexford was deliberately indifferent to his medical care, that Wexford violated his Eighth Amendment rights, and that he suffered cruel and unusual punishment. The district court also construed the deliberate indifference claims against Dr. David at N.P. Woods and concluded that he hadn't stated a proper Monell claim against Wexford. And the district court was right. Mr. White failed to identify any unconstitutional policy, procedure, or widespread practice, so it was appropriate. And what the district court did was what he was supposed to do under 1915A screening, and that is dismiss the deliberate indifference count for failure to state a claim, but give Mr. White an opportunity to amend. Wexford was dismissed without prejudice, not with prejudice. The other thing is, this complaint didn't have a 622 affidavit or report of a health professional. And at the time this review order was entered, that was required under Illinois state law. So if the district court had recognized this as a medical malpractice claim, it would have been correct to dismiss it on that basis as well. And I think the opportunity to amend... Does that apply in federal court as well? That's a procedural issue, and I think there's been a bit of inconsistency. It did at the time, under the Hahn case. Since then, this court has changed that rule, Judge Saney. But at the time of this merit review order, the federal court, this court, was requiring inmates who filed state law medical negligence cases to include the 2622 affidavit and health professionals report. So that was before our subsequent case law that... Clarified that, that's right. But even if the district court, I mean, correct me if I'm wrong, had denied on that basis, it would have indicated that in the denial for Mr. White. So then Mr. White would have known, okay, if I need to amend, this is what I need to do. That's correct. But as it stood, again, I think it was very reasonable to consider this as a deliberate indifference claim against Wexford. What do you do about the allegations in the complaint from paragraph 35? Allegations that Wexford failed to provide plaintiff with timely medical care. A willingness to identify and correct incompetent medical care as they have denied and delayed an MRI on plaintiff's left knee. And the allegation that Wexford failed to provide prompt, reasonably prompt medical treatment. I think under Iqbal and Twombly, the district court could have found that those were sweeping statements that didn't provide the district court with factual context. And both Iqbal and Twombly say, you know, you can't just say you need to have policies. You need to have more staffing. You have to say how those allegations affected your care and treatment. So I think even if the court had considered this a negligence count, it would have been well within the law to have dismissed it as a negligence claim as well. And I think we can't forget about the fact that Mr. White had the opportunity to amend his complaint. He could have amended it to bring back his deliberate indifference count. He could have amended it to attempt to state a negligence count. And he didn't do so. The district court also did not abuse its discretion in denying his request for leave to amend. White first requested leave to amend 22 months after the deadline for amendments. As you pointed out, Judge Saney, under the scheduling order, his amendments were due by December of 2018. The district court warned Mr. White that you need to amend within that time because beyond that, absent extraordinary circumstances, I'm not going to allow it. And even though he's a pro se plaintiff, he has to follow the rules of the court. This court has said that over and over again. He didn't do so. He didn't request leave to amend by December of 2018. So between the merit review order and the deadline for pleadings, he had nine months to amend his complaint and did not do so. In March of 2020, counsel appears. And I have to take issue with these statements earlier. March of 2020, counsel appears. Counsel doesn't move to amend the complaint until late September, September 30th of 2020. So almost seven months after counsel appears, counsel first attempts to amend the complaint. Do you take issue with the representation that that was, what, one month after the discovery had been reopened? No, discovery was reopened. But reopening discovery, as this court has said in the past, is not the only basis to deny leave to amend. What happened here was the district court said, look, there's been an absence of diligence. Once you're beyond the deadline from the scheduling order, plaintiff has to demonstrate good cause for the delay. There's never been an effort to demonstrate good cause here. There's never been a showing of a reason why it took Mr. White and his counsel as long as it did to file this complaint. You need to demonstrate good cause. If you can't demonstrate good cause, you certainly can't demonstrate an abuse of discretion. It was also prejudicial to the defendants. As you pointed out, Judge Sainib, as a defendant, if I'm facing a medical negligence case during my own client's deposition, I would ask questions very differently than I would in a deliberate indifference case. I would ask him, in your opinion, did you deviate from the standard of care by failing to order an MRI the first time you saw Mr. David? Those are strategic decisions that it would have made a tremendous difference for trial counsel to know whether they were facing a negligence case or a deliberate indifference case. It would have added theories to the case that weren't present in the case. Wexford was never even served, and now he wanted to bring Wexford into the case on a deliberate indifference claim, which would have required discovery about policies, procedures, custom, and practice. He wanted to bring a medical negligence claim against a nurse and a physician, which would have required the defendants to hire experts in those two specialties. And there was no explanation for why this all took so long. There was never a good cause showing, and that has to be balanced by the significant prejudice that would have resulted to the defendants. It would have required the defendants to file yet another motion for summary judgment. We had already moved for summary judgment before the request was made for leave to amend. It would have delayed discovery, it would have delayed dispositive motions, and it would have inevitably delayed trial. Mr. White hasn't provided this court with any legal authority to support his argument that the district court abused its discretion in denying this extraordinarily late request for leave to amend with no good cause shown. As to the merits, deliberate indifference requires a showing that the defendant individually and subjectively knew that the plaintiff was at risk and disregarded a risk of serious harm, and that's not what happened here. Mr. White got an extraordinary amount of care for his knee injury. It's not a matter of a difference of opinion. If a doctor chooses one treatment methodology over another, that is not deliberate indifference. And that's what happened here. What did the professionals say about how to treat knee injuries? MP Wood said when an inmate comes in with a knee injury, we evaluate them, we provide them with crutches if necessary, we order x-rays to make sure there's no fracture, we provide anti-inflammatory medications, we provide pain medications. Dr. David said even if we suspect a meniscal injury or an ACL injury, we often treat those conservatively and successfully with physical therapy. Ms. Tischer, I'm concerned that in ruling on the summary judgment motion, the district court did not engage at all with the expert report that was submitted by the plaintiffs. Why isn't that problematic here? I think it's not problematic because Dr. Canestra's report just would have satisfied establishing a question of fact on a negligence count, and there was no negligence count at the time of this summary judgment hearing. Dr. Canestra spoke in terms of a negligent failure to diagnose, a negligent delay in getting the test, deviations from the standard of care. That was the terminology that Dr. Canestra utilized. And we know that deliberate indifference required plaintiffs to show that no reasonable physician would have taken the position that Dr. David did. And we know two others did. Dr. Ritt at collegial review said, let's wait on the MRI, let's try physical therapy. And also, plaintiffs treating orthopedic surgeon, Dr. Davis, as late as May of 2018, after this case was already on file, his orthopedic surgeon said, I wouldn't perform surgery on this ACL. He needs to continue with his rehabilitation therapy. He has arthritis in the knee. He also may not get the type of physical therapy he needs after ACL surgery. So I don't recommend that he has this surgery until after he's released from prison. So for all those reasons, it falls short of the deliberate indifference standard. And I believe that the expert did give an opinion that the defendants were deliberately indifferent. Well, to say that the defendants are deliberately indifferent as an expert witness doesn't satisfy the standard. He has to show that Dr. I'm sorry. Well, we should probably be clear about the standard we're trying to satisfy here. We're just trying to determine if this thing should have gone to a jury or not. Right. Not whether there was actual deliberate indifference here. And for an expert to say, to state the legal conclusion that there was deliberate indifference doesn't satisfy that. I guess the question is, is it creating a factual issue that a jury needs to sort out? The legal conclusion does not create a factual issue. What plaintiff needed to demonstrate was that Dr. David knew that Mr. White required different kind of treatment and didn't give that treatment. And this record doesn't support that. And Dr. Nestra says that, you know, this thing needs to be treated within six weeks. And Dr. And that is a difference in treatment choices. That is the difference between choosing between conservative management and surgical management. And that's not deliberate indifference. Dr. Davis, who actually operated on this man, said that it was perfectly fine to continue rehabilitation and physical therapy as late as May of 2018. And when we're talking about deliberate indifference, we have to establish that no other practitioner would have taken the same course of treatment as Dr. David. And we know from this record that Dr. Davis, the orthopedic specialist, agreed with Dr. David's approach. With respect to N.P. Woods, N.P. Woods referred this patient to Dr. David during his third visit with the patient. He evaluated Mr. N.P. Woods, gave him swelling, ordered crutches, gave him pain medication, gave him anti-inflammatories, changed the anti-inflammatory on the second visit. And on the third visit, sent him to see Dr. David. That's not deliberately indifferent. That's not ignoring a condition. Dr. David, the short story is, as you pointed out, Judge St. Eve, in the second visit, after the 2015 injury and the 2017 re-injury, during the second visit, Dr. David asked Mr. White for an MRI. The first MRI, Dr. Ritt said, let's try physical therapy. And what we know is the physical therapy worked. Dr. David said the fact that he had no symptoms, reported no knee complaints between April of 2016 and August of 2017 tells me the physical therapy worked.  the knee. And during Dr. David's second visit with him, he sends him for another referral for an MRI. That MRI is performed. He's referred to the orthopedist, Dr. Davis, and thereafter, his care is controlled by Dr. Davis. So for all those reasons, neither N.P. Woods nor Dr. David were deliberately indifferent to this knee condition. And so we'd ask that this court affirm judgment in favor of the defendants. Thank you, Ms. Blackson. You have a little bit of time left. I just want to ask the court to give the careful consideration to the expert report that the district court didn't give, that the district court's reasoning and the reasoning argued by the health care personnel showed that he was getting treatment and the defendants were not deliberately indifferent. The proper inference under the summary judgment standard and based on the expert's unrebutted report was that all of these attempted treatments were persisting in an ineffective course of treatment. It seemed odd that the district court didn't even mention the expert report. Do you have any insight into that? I do not. The district court's ruling, I think, has a footnote saying that the district court developed its own summary of the facts, which is another thing that I found odd. So I don't really have insight into why the district court didn't consider the expert report. Unless there are further questions, thank you for your time. I ask the court to reverse. Thank you, Mr. Blackson. The court will take the case under advisement.